UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | * | |
| | * | |
| | * | |
| In Re:  Atlantic Power Corporation | * | |
| Securities Litigation | * | Civil Action No. 1:13-cv-10537-IT |
| | * | |
| | * | |
| | * | |
| | * | |

MEMORANDUM & ORDER

October 21, 2015

TALWANI, D.J.

    I.    Introduction

    Before the court is Lead Plaintiff Feldman, Shapero, Carter and Smith Investor Group's ("Plaintiff") Motion for Relief from Judgment Under Rule 60(b) and For Leave to Amend Complaint Under Rule 15 [#129].  The motion seeks relief from this court's Memorandum and Order [#124] of March 13, 2015 dismissing Plaintiff's Consolidated Class Action Complaint [#81] ("Complaint") in this securities action, and denying leave to amend the Complaint.  The dismissal was based on the court's determination that Plaintiff had not met its burden of establishing a strong inference of scienter, either in the Complaint or in the Proposed Amended Consolidated Class Action Complaint.  See Mem. & Order 18, 25 [#124].  Plaintiff seeks relief from that order under Fed. R. Civ. P. 60(b)(2), on the basis of purportedly newly discovered evidence referenced in another case.  Pl.'s Mem. Law Supp. Mot. Relief J. 1 [#130] [hereinafter "Pl.'s Mem. Law"].  Plaintiff contends that this newly discovered evidence demonstrates that the challenged statements were materially false and misleading and that Defendants acted with

scienter.  Id.  at 1, 10.  For the reasons set forth in this memorandum and order, the motion is

denied.

      II.     <u>Factual Background</u>

          *A.  Consolidated Massachusetts Action*

Plaintiff filed the Complaint on June 6, 2014, alleging (1) violation section 10(b) of the

Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated

thereunder; (2) violation of section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a); and (3) unjust

enrichment against Defendants Welch and Ronan only (the "Individual Defendants").  The

Complaint asserted claims on behalf of purchasers of the Atlantic Power's (the "Company")

common stock that traded on the New York Stock Exchange between June 20, 2011 and March

4, 2013 (the "Class Period").  Compl. ¶ 1.  The Complaint alleged that Defendants made

numerous materially false and misleading statements and omissions before and during the Class

Period, concerning the Company's ability to sustain the dividend it had previously paid its

shareholders.  Compl. ¶¶ 10, 32, 95.  Plaintiff asserted that, as a result of a 65% reduction in the

Company's monthly dividend announced February 28, 2013, the market value of the Company's

securities dropped dramatically, causing  class members economic damages.  Id. ¶¶ 9-10.

Defendants filed a <u>Motion to Dismiss</u> [#85] on August 5, 2014, arguing that the

allegations in the Complaint did not establish that the purported misstatements regarding the

sustainability of the dividends were materially false and misleading, nor actionable, nor did the

allegations establish the requisite scienter—i.e. that Defendants knew or should have known that

the statements were false or misleading.

Because the court found the allegations as to scienter inadequate, it reached only that

issue.  As reviewed in the <u>Memorandum and Order</u> of March 13, 2015 [#129] the allegations of

scienter were based on (1) the fact that the Company took on "crippling debt" in connection with certain acquisitions during the Class Period, such that it knew or should have known that the dividend was unsustainable; and (2) the fact that Defendants knew, from the beginning of the Class Period, that contracts for major cash-flow producing assets would be expiring without renewal.  Compl. ¶¶ 4-6.  Plaintiff thus alleged that, fully aware of this purportedly bleak financial outlook, Defendants materially misrepresented the sustainability of the dividend, and made disclosures in an intentionally complicated manner in order to deceive the public.  Mem. & Order 18-19.

The court rejected Plaintiff's suggestions that these allegations establish that Defendants knew or should have known that the statements regarding the sustainability of the dividend were materially false.  First, the court concluded that Plaintiff had not asserted that any information was actually withheld from the public.  Id. at 19.  Therefore, whatever information Plaintiff contends should have enabled Defendants to know that the dividends were not sustainable was also available to the public, and would have enabled the market to draw the conclusion Plaintiff suggests was compelled by that information.  Id.  Additionally, the court concluded that the complicated manner in which disclosures were presented may support an inference that those disclosures were false, but it did not support a strong inference of scienter.  Id. at 21.

The court further found that Plaintiff's additional allegation that the Individual Defendants had the motive and opportunity to mislead the public were insufficient to establish scienter absent "some additional misconduct."  Id. at 23 (quoting In re Smith & Wesson Holding Corp. Sec. Litig., 604 F. Supp. 2d 332, 344 (D. Mass. 2009) (internal quotations omitted)).  Finally, the court concluded that the temporal proximity between the purported misstatements (early November 2012) and the dividend cut (late February 2013), even when viewed in

conjunction with the other allegations, was also insufficient to plead the necessary scienter. Mem. & Order 23-24.

The court therefore dismissed Count I for failing to adequately plead scienter, and did not address whether the allegations as to material falsity were otherwise adequate. The court also dismissed Count II of the Complaint under section 20(a), as derivative of the Count I. Id. at 24. Finally, the court dismissed the third cause of action for unjust enrichment for failing to plead that Plaintiff made efforts to cause the directors of the Company to bring the claim themselves, as required by applicable British Columbia law. Id. at 24-25.

Plaintiff timely filed a Notice of Appeal [#126] of the March 13, 2015 Memorandum and Order, and filed their opening brief on August 10, 2015.

    B. Canadian Action

Shareholders of the Company also brought suit in Canada, similarly alleging that Defendants had misrepresented the Company's ability to maintain the dividend. On July 24, 2015, Justice Edward P. Belobaba of Ontario Superior Court of Justice for Ontario, Canada issued a Decision (the "Decision") dismissing the plaintiffs' motion for leave and certification to pursue a class action under Canadian law for the period of November 5, 2012 to February 28, 2013. See Coffin v. Atlantic Power Corp., 2015 ONSC 3686, CV-13-480939-CP (2015). Unlike this court's more limited review of the plausibility of the allegations at the motion to dismiss stage, Justice Belobaba's dismissal was based on review of thousands of pages of evidence filed primarily by Defendants, and largely under seal. Decision ¶ 24. Notwithstanding the fact that Justice Belobaba found that "there is no evidence that [the Company's] management or Board . . . did not believe what they were saying" concerning the sustainability of the dividend, Decision ¶ 70, Plaintiff contends that his Decision cited to "evidence that Defendants Atlantic

Power, Welch and Ronan knew or should have known of the dividend cut and the extent of the

cut long before announcing it, yet hid those facts from investors." Pl.'s Mem. Law 4. Plaintiff

now moves to vacate the court's dismissal based on this newly discovered evidence.

The newly discovered evidence cited in Justice Belobaba's Decision that is the basis for

the instant motion is:

(1) evidence that, in a January 2012 meeting, the Board of Directors (a) "understood that it had to continue making accretive acquisitions and sell assets if it wanted to sustain the dividend past 2017" and (b) asked for presentations about how the Company would handle the upcoming expiration of two contracts providing significant cash flow. Decision ¶ 38; Proposed Second Amended Complaint ("Proposed Complaint") ¶¶ 7, 8, 67 [#130-2];

(2) evidence that, in a June 2012 meeting, the Board of Directors "confirmed the importance of enhancing cash flow by making new accretive acquisitions and selling assets." Decision ¶ 40; Proposed Complaint ¶ 68;

(3) an email from Defendant Welch to an Executive Vice President and CFO at the time (Defendant Ronan's predecessor), forwarding an email sent June 27, 2012 from the Board of Directors which inquired into the Company's dividend policy and the plan to stay competitive on acquisitions, and which Welch characterized as "full of interesting questions and a fair amount of uncertainty/anxiety." Decision ¶ 113; Proposed Complaint ¶¶ 8, 69;

(4) evidence that, in a September 2012 meeting, the Board of Directors discussed the June 27, 2012 email from the Board and scenarios for the Company's future, including scenarios involving dividend reductions that would be effective January 2014. Decision ¶ 115; Proposed Complaint ¶ 70;

(5) the fact that the company met with an investment bank on October 17, 2012, who suggested that the Company "should be making acquisitions outside of the 'independent power generation' space in the midstream or downstream sectors of the energy market." Decision ¶ 45; Proposed Complaint ¶ 71.

(6) a handwritten note by Defendant Ronan reading "no benefit to signaling cut in advance," made around the time of a conference call with analysts in November 6, 2012, during which questions about the sustainability of the dividend were discussed. Decision ¶ 118; Proposed Complaint ¶¶ 9, 73;

(7) the fact that, the in January 2013, the Board requested a range of financial forecast scenarios, including scenarios that projected significant dividend cuts as well as those that projected no dividend cuts. Decision ¶ 59; Proposed Complaint ¶ 75; and

(8) a March 1, 2013 email from an employee in the Company's commercial development team stating that he "knew [the dividend cut] was coming for a long time." Decision ¶ 121; Proposed Complaint ¶ 77.

III.   Discussion

A. *Legal Standards*

Federal Rule of Civil Procedure 60(b) invests a court, "in certain carefully delimited situations, with the power to 'vacate judgments whenever such action is appropriate to accomplish justice.'" Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 19 (1st Cir. 1992), quoting Klapprott v. United States, 335 U.S. 601, 614-615 (1949).  Motions brought under Rule 60(b) are committed to the sound discretion of the district court,  Rodriguez-Antuna v. Chase Manhattan Bank Corp., 871 F.2d 1, 3 (1st Cir. 1989), and may be granted only under exceptional circumstances.  Lepore v. Vidockler, 792 F.2d 272, 274 (1st Cir. 1986).  A court should not vacate a judgment under Rule 60(b) if doing so will "an empty exercise." Teamsters, 953 F.2d 17, 20 (1st Cir. 1992).

Plaintiff's motion is brought under Rule 60(b)(2) specifically, which provides that relief may be granted due to "newly discovered evidence that, with reasonable diligence could not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2).  To prevail on a motion under Rule 60(b)(2), the moving party must demonstrate that (1) evidence has been discovered since the judgment; (2) the evidence could not be due diligence have been discovered earlier by the movant; (3) the evidence is not merely cumulative or impeaching; and (4) the evidence is of such a nature that it could probably change the result.

Mitchell v. United States, 141 F.3d 8, 18 (1st Cir. 1998).[1]  "The moving party bears the burden of establishing each of the Mitchell criteria."  United States Steel, 315 F.3d at 52.

The instant motion further seeks leave to file the Proposed Complaint [#130-2] pursuant to Rule 15, which provides that leave to amend "should freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).  A court may deny leave to amend if amendment would be futile, applying the same standard for legal sufficiency as would be applied to a Rule 12(b)(6) motion. Glassman v. Computervision Corp., 90 F.3d 617 (1st Cir. 1996).   In considering such a motion under Rule 12(b)(6) or Rule 15, the court may properly consider "only facts and documents that are part of or incorporated into the complaint."  Trans-Spec Truck Service, Inc. v. caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).  Where "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."  Id. (quoting Beddal v. State St. Bank & Trust Co., 137 F.3d 12 16-17 (1st Cir. 1998)).

    *B.  Analysis*

As an initial matter, the court may consider Justice Belobaba's Decision in its analysis of the Proposed Complaint's new allegations, because the Proposed Complaint expressly references and repeatedly relies on it, and therefore incorporates it.  See id.  The court finds that Plaintiff has established that the evidence described by Justice Belobaba's Decision was discovered since the court's dismissal of the Complaint, that Plaintiff could not have obtained it through

---

[1] Though the Mitchell standard was articulated in the context of a motion for a new trial, it has been held equally applicable to motions for relief from an order granting a motion to dismiss or for summary judgment.  See, e.g., Washington v. State Street Bank & Trust Co., 14 F. App'x. 12, 15 (1st Cir. 2001); United States Steel v. M. DeMatteo Constr. Co., 315 F.3d 43, 52 (1st Cir. 2002).

reasonable diligence, and that the evidence is not cumulative or impeaching.  However, the court

further concludes that evidence is not of such a nature that it would likely change the outcome,

because, still, none of the "newly discovered evidence" establishes a strong inference of scienter.

Accordingly, the court also determines that the proposed amendments in the Proposed Complaint

would be futile.

First, the Proposed Complaint overstates the evidence of what happened at the January

2012 strategy meeting.  According to the Decision, at the January 2012 meeting the Board

understood the need to continue to make accretive acquisitions and requested presentations on

how to manage cash flow reductions.  Decision ¶ 38.  This evidence does not support an

inference that the Board had decided to cut the dividend at that time, nor does it even support

Plaintiff's allegation that the Board was "privately exploring a dividend cut at least as early as

January 2012."  Proposed Complaint ¶ 7.  Moreover, according to Justice Belobaba, the evidence

indicated that "the Board believed the company would be able to manage these challenges in

2013."  Decision ¶ 38.

Second, there is no basis to infer scienter from evidence of the June 2012 meeting, during

which the Board "met and reviewed multiple scenarios to achieve positive cash balances through

2015 and 2016, ultimately confirming the importance of enhancing cash flow by making new

accretive acquisitions and selling assets."  Proposed Complaint ¶ 26.  This new evidence does

not so much as support a strong inference that dividend reductions were discussed at the June

2012 meeting, let alone agreed upon.

Third, Plaintiff mischaracterizes the newly discovered evidence of the June 27, 2012

email from the Board, forwarded by Defendant Welch.  First, the Proposed Complaint omits the

fact that, according to the Decision, the June 27, 2012 email inquired "about the company's

"dividend policy (increase, decrease) under various strategic scenarios.'" Decision ¶ 113.

Therefore, the newly discovered evidence about this email implies there was a possibility that the

dividend might be increased as of June 2012, and thus does not create a strong inference that

Defendants knew it would be cut in February 2013.  Moreover, Defendant Welch's

characterization of his perceived anxiety of some Board members establishes at most that the

Company was contemplating changes in dividend policy, not that Defendants knew or should

have known that dividend reductions were certain, such that any failure to disclose such

reductions at that time would have been a knowing omission.  See In re Genzyme Corp. Sec.

Litig., 754 F.3d 31, 44 (1st Cir. 2014) ("[I]t was proper for [defendants] to open an inquiry into

the matter, and to wait for a complete picture to become apparent before making any final

announcements.")

Fourth, Plaintiff's allegations that the Board "discussed possible dividend reduction

strategies" at the September 2012 Board meeting, Proposed Complaint ¶ 70, similarly

mischaracterizes what the newly discovered evidence shows by omitting that the "dividend

reduction strategies" that were discussed were not to take place until January 1, 2014.

Decision ¶ 115.  Nonetheless, the mere discussion of dividend reduction strategies at a board

meeting does not raise a strong inference of scienter, because a company that adequately

investigates its options before issuing a statement does not commit fraud.  See Fire & Police

Ass'n v. Abiomed, Inc. 778 F.3d 228, 244 (1st Cir. 2015).  And again, the evidence described by

Justice Belobaba also included that "[t]he meeting concluded with the Board and management

both committed to maintaining the existing dividend level and pursuing the company's growth

strategy."  Decision ¶ 115.  Therefore, the evidence as to the September 2012 meeting similarly

fails to create any inference that the Company knew or should have known that the dividend was

unsustainable at that time.

Fifth, Defendants' October 2012 meeting with an investment bank that suggested that Defendant start making acquisitions outside of its usual market, Proposed Complaint ¶ 71, does not establish anything more other than that advice was given and received.  To the extent the giving of this advice creates any adverse inference as to the health of the Company, it does not create the further inference that Defendant knew or should have known of the dividend reductions in particular.

Sixth, the court similarly finds that the evidence of Defendant Ronan's handwritten note stating "no benefit to signaling cut in advance," Proposed Complaint ¶ 73, fails to create a strong inference of scienter.  Given the fact that this note was written around the same time as a conference call with analysts, id., there is insufficient evidence from which to infer that these words reflected the state of mind the Defendants, as opposed to a view expressed by someone else who may have participated on the call.  Moreover, even if the note did reflect Defendant Ronan's thoughts, it does not establish that the dividend was unsustainable as of November 2012, nor does it create a strong inference that Defendants believed it to be unsustainable at time.

Seventh, regarding Plaintiff's allegations as to the January and February 2013 meetings, Plaintiff again misstates what the "new evidence" actually shows.  Plaintiff alleges that in January 2013, Defendants were reviewing financial forecast scenarios "including scenarios that projected dividend cuts of 50 to 70 percent," but omits the fact that scenarios reviewed also included scenarios with no dividend cuts.  Decision ¶ 59.  Moreover, even if Defendants were contemplating dividend cuts in January 2013, this does not create a strong inference of scienter at the time of the latest alleged misstatements, in November 2012.  See Maldonado v. Dominguez, 137 F.3d 1, 10 n.7 (1st Cir. 1998) ("the fact that [the defendants] had discovered [the company's]

fatal flaw before [a subsequent] board meeting is not probative of any attempt to defraud plaintiffs months earlier.")

Finally, the court finds that the post-Class Period email from an employee in the commercial development team also does not create a strong inference of scienter on the part of Defendants.  See Abiomed, 778 F.3d at 245 (allegations from non-senior management employee witnesses did not establish scienter).

IV.    Conclusion

For the foregoing reasons, Plaintiff has not established that the "newly discovered evidence" cited to in the Decision creates a strong inference of scienter, and have therefore not met their burden of establishing that this evidence could probably change the result of this court's dismissal of the Complaint.  Accordingly, the Motion for Relief from Judgment Under Rule 60(b) and For Leave to Amend Complaint Under Rule 15 [#129] is DENIED.

IT IS SO ORDERED.

/s/ Indira Talwani
United States District Judge